IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ------------------------------------------------------------ x | |
| In re: | : Chapter 11 |
| | : |
| OVERSEAS SHIPHOLDING GROUP, Inc., et al.,[1] | : Case No.  12-20000 (PJW) |
| | : |
| | : Jointly Administered |
| Debtors. | : |
| | : |
| | : |
| ------------------------------------------------------------ x | **Objection Deadline: December 20, 2012, at 4:00 p.m.** |
| | **Hearing Date: December 27, 2012, at 10:00 a.m.** |

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF OVERSEAS SHIPHOLDING GROUP, INC., ET AL., PURSUANT TO 11 U.S.C. §§ 328(a) AND 1103, FED. R. BANKR. P. 2014 AND 5002, AND LOCAL R. 2014-1, FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF HOULIHAN LOKEY CAPITAL, INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER, *NUNC PRO TUNC*, TO NOVEMBER 30, 2012

The Official Committee of Unsecured Creditors (the "Committee") of Overseas

Shipholding Group, Inc. and its affiliated debtors and debtors in possession (collectively, the

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Overseas Shipholding Group, Inc. (7623); OSG International, Inc. (7117); OSG Bulk Ships, Inc. (2600); 1372 Tanker Corporation (4526); Africa Tanker Corporation (9119); Alcesmar Limited (5306); Alcmar Limited (5307); Alpha Suezmax Corporation (1684); Alpha Tanker Corporation (6063); Amalia Product Corporation (3808); Ambermar Product Carrier Corporation (8898); Ambermar Tanker Corporation (7100); Andromar Limited (5312); Antigmar Limited (5303); Aqua Tanker Corporation (7408); Aquarius Tanker Corporation (9161); Ariadmar Limited (5301); Aspro Tanker Corporation (4152); Atalmar Limited (5314); Athens Product Corporation (9565); Atlas Chartering Corporation (8720); Aurora Shipping Corporation (5649);Avila Tanker Corporation (4155); Batangas Tanker Corporation (8208); Beta Aframax Corporation (9893); Brooklyn Product Tanker Corporation (2097); Cabo Hellas Limited (5299); Cabo Sounion Limited (5296); Caribbean Tanker Corporation (6614); Carina Tanker Corporation (9568); Carl Product Corporation (3807); Concept Tanker Corporation (9150); Crown Tanker Corporation (6059); Delphina Tanker Corporation (3859); Delta Aframax Corporation (9892); DHT Ania Aframax Corp. (9134); DHT Ann VLCC Corp. (9120); DHT Cathy Aframax Corp. (9142); DHT Chris VLCC Corp. (9122); DHT Rebecca Aframax Corp. (9143); DHT Regal Unity VLCC Corp. (9127); DHT Sophie Aframax Corp. (9138); Dignity Chartering Corporation (6961); Edindun Sh ipping Corporation (6412); Eighth A framax Tanker Corporation (8100); Epsilon Aframax Corporation (9895); First Chemical Carrier Corporation (2955); First LPG Tanker Corporation (9757); First Union Tanker Corporation (4555); Fourth Aframax Tanker Corporation (3887); Front President Inc. (1687); Goldmar Limited (0772); GPC Aframax Corporation (6064); Grace Chartering Corporation (2876); International Seaways, Inc. (5624); lademar Limited (7939); Joyce Car Carrier Corporation (1737); Juneau Tanker Corporation (2863); Kimolos Tanker Corporation (3005); Kythnos Chartering Corporation (3263); Leo Tanker Corporation (9159); Leyte Product Tanker Corporation (9564); Limar Charter Corporation (9567); Luxmar Product Tanker Corporation (3136); Luxmar Tanker LLC (4675); Majestic Tankers Corporation (6635); Maple Tanker Corporation (5229); Maremar

"<u>Debtors</u>") hereby files this application (the "<u>Application</u>") seeking entry of an order authorizing

the Committee to retain and employ Houlihan Lokey Capital, Inc. ("<u>Houlihan Lokey</u>"), <u>nunc pro</u>

<u>tunc</u> to, and effective as of, November 30, 2012, as financial advisor and investment banker to

the Committee in the above-captioned cases, pursuant to sections 328(a) and 1103(a) of title 11

of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>"), Rules

2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and

---

Product Tanker Corporation (3097); Maremar Tanker LLC (4702); Marilyn Vessel Corporation (9927); Maritrans General Partner Inc. (8169); Maritrans Operating Company L.P. (0496); Milos Product Tanker Corporation (9563); Mindanao Tanker Corporation (8192); Mykonos Tanker LLC (8649); Nedimar Charter Corporation (9566); Oak Tanker Corporation (5234); Ocean Bulk Ships, Inc. (6064); Oceania Tanker Corporation (9164); OSG 192 LLC (7638); OSG 209 LLC (7521); OSG 214 LLC (7645); OSG 215 Corporation (7807); OSG 242 LLC (8002); OSG 243 LLC (7647); OSG 244 LLC (360 I); OSG 252 LLC (7501); OSG 254 LLC (7495); OSG 300 LLC (3602); OSG 400 LLC (7499); OSG America LLC (2935); OSG America L.P. (2936); OSG America Operating Company LLC (5493); OSG Car Carriers, Inc. (1608);OSG Clean Products International, Inc. (6056); OSG Columbia LLC (7528); OSG Constitution LLC (8003); OSG Courageous LLC (2871); OSG Delaware Bay Lightering LLC (4998); OSG Discovery LLC (8902); OSG Endeavor LLC (5138); OSG Endurance LLC (2876); OSG Enterprise LLC (3604); OSG Financial Corp. (8639); OSG Freedom LLC (3599); OSG Honour LLC (7641); OSG Independence LLC (7296); OSG Intrepid LLC (7294); OSG Liberty LLC (7530); OSG Lightering Acquisition Corporation (N/A); OSG Lightering LLC (0553); OSG Lightering Solutions LLC (5698); OSG Mariner LLC (0509); OSG Maritrans Parent LLC (3903); OSG Navigator LLC (7524); OSG New York, Inc. (4493); OSG Product Tankers AVTC, LLC (0001); OSG Product Tankers I, LLC (8236); OSG Product Tankers II, LLC (8114); OSG Product Tankers, LLC (8347); OSG Product Tankers Member LLC (4705); OSG Quest LLC (1964); OSG Seafarer LLC (7498);OSG Ship Management, Inc. (9004); OSG Valour Inc. (7765); Overseas Allegiance Corporation (7820); Overseas Anacortes LLC (5515); Overseas Boston LLC (3665); Overseas Diligence LLC (6681); Overseas Galena Bay LLC (6676); Overseas Houston LLC (3662); Overseas Integrity LLC (6682); Overseas Long Beach LLC (0724); Overseas Los Angeles LLC (5448); Overseas Martinez LLC (0729); Overseas New Orleans LLC (6680); Overseas New York LLC (0728); Overseas Nikiski LLC (5519); Overseas Perseverance Corporation (7817); Overseas Philadelphia LLC (7993); Overseas Puget Sound LLC (7998); Overseas Sea Swift Corporation (2868); Overseas Shipping (GR) Ltd. (5454); Overseas ST Holding LLC (0011); Overseas Tampa LLC (3656); Overseas Texas City LLC (5520); Pearlmar Limited (7140); Petromar Limited (7138); Pisces Tanker Corporation (6060); Polaris Tanker Corporation (6062); Queens Product Tanker Corporation (2093); Reymar Limited (7131); Rich Tanker Corporation (9147); Rimar Chartering Corporation (9346); Rosalyn Tanker Corporation (4557); Rosemar Limited (7974);Rubymar Limited (0767); Sakura Transport Corp. (5625); Samar Product Tanker Corporation (9570); Santorini Tanker LLC (0791); Serifos Tanker Corporation (3004); Seventh Aframax Tanker Corporation (4558); Shirley Tanker SRL (3551); Sifnos Tanker Corporation (3006); Silvermar Limited (0766); Sixth Aframax Tanker Corporation (4523); Skopelos Product Tanker Corporation (9762); Star Chartering Corporation (2877); Suezmax International Agencies, Inc. (4053);Talara Chartering Corporation (3744); Third United Shipping Corporation (5622); Tokyo Transport Corp. (5626); Transbulk Carriers, Inc. (6070); Troy Chartering Corporation (3742); Troy Product Corporation (6969); Urban Tanker Corporation (9153); Vega Tanker Corporation (3860); View Tanker Corporation (9156); Vivian Tankships Corporation (7542); Vulpecula Chartering Corporation (8718); Wind Aframax Tanker Corporation (9562). The mailing address of the Debtors is: 666 3rd Avenue, New York, NY 10017.

Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). In support of this Application, the Committee submits and incorporates by reference the Declaration of David R. Hilty, attached hereto as "**Exhibit B**" (the "Hilty Declaration"). In further support of the Application, the Committee respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory and rule predicates for the relief requested herein are Bankruptcy Code sections 328(a) and 1103(a), Bankruptcy Rule 2014 and Local Rule 2014-1.

## BACKGROUND

2.      On November 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. On November 15, 2012, the Court entered an order providing for the joint administration of the Debtors' chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

3.      On November 29, 2012, pursuant to Bankruptcy Code section 1102, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee. The

Committee currently consists of five members.[1]  On November 29, 2012, pursuant to Bankruptcy Code section 1103(a), the Committee selected Akin Gump to serve as co-counsel to the Committee.  On November 30, 2012, the Committee selected FTI Consulting, Inc. ("FTI Consulting") and Houlihan Lokey to serve as the Committee's forensic accountants and investment bankers, respectively.[2]

## RELIEF REQUESTED

4.      By this Application, the Committee requests that the Court enter an order (i) authorizing the Committee to retain Houlihan Lokey as its financial advisor and investment banker, for the purpose of advising the Committee during all phases of the Debtors' chapter 11 cases, pursuant to the terms of the agreement, dated as of November 30, 2012, attached hereto as "**Exhibit A**" (the "Engagement Agreement"), which is incorporated herein by reference, and (ii) granting a waiver of compliance with the information requirements relating to compensation requests set forth in Local Rule 2014-1, to the extent requested herein.

5.      The Committee brings this Application because of the critical importance of a financial advisor and investment banker to assist in the performance of its duties.  The Committee believes that Houlihan Lokey is well qualified to provide advisory services and that the terms of its retention are reasonable.

---

[1]   The Committee is currently comprised of the following members: (i) DNB Bank ASA, New York Branch, as administrative agent (chair of the Committee); (ii) John Hancock Life Insurance Company (USA); (iii) MCA Associates, Inc.; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon Trust Company, N.A., as indenture trustee under the Debtors' 8.125% senior notes due 2018.

[2]   By separate application, the Committee will be seeking to retain FTI Consulting.

## BASIS FOR RELIEF

### A.    Houlihan Lokey's Qualifications

6.    Houlihan Lokey is a nationally recognized investment banking and financial advisory firm, with fourteen offices worldwide and more than 800 professionals. Houlihan Lokey's Financial Restructuring Group, which has more than 165 professionals, is one of the leading advisors and investment bankers to unsecured and secured creditors, debtors, acquirers, and other parties-in-interest involved in financially troubled companies both in and outside of bankruptcy. Houlihan Lokey has been, and is, involved in some of the largest restructuring cases in the United States, including representing official committees in Lehman Brothers Holdings Inc., Arcapita B.S.C.(c)., Enron Corp., WorldCom, Inc., Delta Airlines, Inc., General Growth Properties, Capmark, and representing debtors in Mark IV Industries, Buffets Holdings, Inc., Bally Total Fitness Holding Corp., XO Communications, Inc., Six Flags, Inc., Granite Broadcasting Corp., and MS Resorts. Houlihan Lokey also advised the bondholders in CIT Group, Inc. as well as the second-lien debt holder and plan sponsor in General Maritime, Inc.

7.    In light of the size and complexity of the Debtors' chapter 11 cases, the Committee requires the services of a seasoned and experienced financial advisor that is familiar with the Debtors' businesses and operations and the chapter 11 process. The Committee believes that Houlihan Lokey is well qualified to provide its services in a cost-effective, efficient and timely manner. Houlihan Lokey will coordinate with the other retained professionals in the chapter 11 cases to eliminate unnecessary duplication or overlap of work. The Committee submits that the employment and retention of Houlihan Lokey would be in the best interest of the Debtors' estates and their unsecured creditors.

## B.    Services

8.      As further set forth in the Engagement Agreement, the Committee has requested that Houlihan Lokey serve as its financial advisor and investment banker during the Debtors' chapter 11 cases to perform the following services on behalf of the Committee:

a)      Assist the Committee in analyzing business plans and forecasts of the Debtors;

b)      Assist the Committee in evaluating the assets and liabilities of the Debtors;

c)      Assist the Committee in assessing the financial issues and options concerning (i) the sale of the Debtors, either in whole or in part, and (ii) the Debtors' chapter 11 plan(s) of reorganization or liquidation or any other chapter 11 plan(s);

d)      Assist the Committee in analyzing and reviewing the financial and operating statements of the Debtors;

e)      Assist with such other financial analyses as the Committee may require in connection with the chapter 11 cases;

f)      Assist in the determination of an appropriate capital structure for the Debtors;

g)      Assist in analyzing strategic alternatives available to the Debtors;

h)      Assist in evaluating the Debtors' valuation and debt capacity in light of its projected cash flows;

i)      Assist the Committee in the assessment of its liquidity, uses of liquidity, and identifying potential alternative sources of liquidity in connection with any chapter 11 plan(s) or otherwise;

j)      Assist with representation of the Committee in negotiations with the Debtors and third parties with respect to any plan or reorganization and with respect to any of the foregoing;

k)      Assist in evaluating potential settlement negotiations relating to the rejection of any executor contracts;

l)      Assisting the Committee with respect to negotiations related to any potential causes of action;

m)    Assist the Committee during court hearings by providing testimony in court on behalf of the Committee with respect to any of the foregoing, if necessary; and

n)    Providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Committee.

9.    The Committee hereby requests that the Court approve Houlihan Lokey's retention nunc pro tunc to November 30, 2012. This is appropriate because, since that date, Houlihan Lokey has been providing critical services to the Committee, including reviewing extensive operating information, meeting with the Debtors' advisors, analyzing various issues confronting the Debtors and communicating with the Committee regarding such matters.

## C.    No Duplication of Services

10.    Contemporaneously with the filing of this Application, the Committee has also filed an application for authority to retain FTI Consulting, to provide certain other forensic accounting services which are complementary to those provided by Houlihan Lokey. The services that FTI Consulting is to provide to the Committee are separate and distinct from the financial advisory services that Houlihan Lokey will be providing to the Committee. In order to ensure that there is no unnecessary duplication of services by either firm during the pendency of these chapter 11 cases, Houlihan Lokey and FTI Consulting will coordinate on the services they are providing to the Committee. To perform these services in a cost-effective manner, Houlihan Lokey will endeavor, when possible, to work with other professionals retained in these cases so as to avoid duplicating work or creating unnecessary work. At the Committee's request, representatives Houlihan Lokey and FTI Consulting have met to address an appropriate and efficient division of responsibilities.

11.    It is currently contemplated that Houlihan Lokey will be primarily responsible for advising the Committee on the financial and strategic elements of the Debtors' plan of

reorganization (including relevant valuations and the viability of a stand-alone plan of reorganization), potential merger and acquisition transactions, as well as financing alternatives for the Debtors, including exit financing and FTI Consulting will be principally responsible for providing to the Committee financial analyses of the Debtors' liquidity forecasts and results, liquidity elements of the Debtors' plan of reorganization and exit strategy, tax-related advice, inter-company analysis, and claims analysis (including a review of potential preferential actions). While both Houlihan Lokey and FTI Consulting recognize that it is difficult to predict how these complex cases will proceed, they will undertake to coordinate all of their services to the Committee in order to minimize, wherever possible, any unnecessary duplication of services and any potential burden on the Debtors and their professional advisors.  Moreover, Houlihan Lokey and FTI Consulting have worked in a co-advisory role a number of times, including in the Lehman Brothers, Inc., Arcapita Bank B.S.C(c)., General Growth Properties and Chemtura chapter 11 cases.  Thus, the firms have experience ensuring that best practices are maintained in the provision of services to the committee.

**D.**     **Terms of Houlihan Lokey's Engagement**

12.     As described more fully in the Engagement Agreement, Houlihan Lokey will be entitled to receive, as compensation for its services:

> a)     ***Monthly Fee.***  Subject to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules of the Bankruptcy Court and any applicable Bankruptcy Court orders, commencing as of the Effective Date, and continuing on each monthly anniversary of the Effective Date thereafter during the term of this Engagement Agreement, Houlihan Lokey shall be paid a monthly cash fee of $175,000 ("Monthly Fee"). Fifty percent (50%) of the Monthly Fees, following the twelfth (12th) Monthly Fee, timely received by Houlihan Lokey and approved by the final order of the Bankruptcy Court shall be credited against the Deferred Fee (as defined below) to which Houlihan Lokey becomes entitled hereunder (it

being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Deferred Fee be reduced below zero; and

b)    ***Deferred Fee.*** In addition to the other fees provided for herein, the Debtors shall pay Houlihan Lokey a fee (the "Deferred Fee") to be paid in cash of $3,250,000.00. The Deferred Fee shall be earned and payable upon the confirmation of a chapter 11 plan of reorganization with respect to the Debtors (an "Approved Plan"), and shall be paid on the effective date of such Approved Plan, subject to applicable orders of the Bankruptcy Court.

13.    In addition to all of the other fees and expenses described in this Agreement, the Debtors shall, upon Houlihan Lokey's request and in accordance with applicable orders of the Bankruptcy Court, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed fee arrangements made with, travel agents, airlines or other vendors on a periodic basis, and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

14.    The Committee also requests that, subject to application to this Court, Houlihan Lokey be reimbursed by the Debtors for the fees and expenses of Houlihan Lokey's legal counsel incurred in connection with (i) the negotiation and performance of this Application and the matters contemplated hereby and (ii) fee disputes and objections to Houlihan Lokey's fees by any party in these cases.

9

15.     In light of the foregoing and given the numerous issues which Houlihan Lokey may be required to address in the performance of its services hereunder, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Houlihan Lokey's services for engagements of this nature and in an out-of-court context, the Committee acknowledges and agrees that the Monthly Fees are fair and reasonable under the standards set forth in Bankruptcy Code section 328(a).

## D.     Disclosure of Compensation

16.     Prior to the Petition Date, Houlihan Lokey did not receive any payments from the Debtors.  Houlihan Lokey does not hold a prepetition claim against the Debtors for services rendered.

17.     To the best of the Committee's knowledge, and except as disclosed in the Hilty Declaration, Houlihan Lokey has not provided services to the Debtors' creditors, equity security holders, or any other parties-in-interest, or its respective attorneys, in any matter relating to the Debtors or their estates.

18.     Additionally, as set forth in the Engagement Agreement, the Committee requests that the Debtors indemnify and hold Houlihan Lokey harmless from and against any and all losses, claims, damages or liabilities in connection with the engagement, except to the extent they arise as a result of any gross negligence or willful misconduct on the part of Houlihan Lokey in the performance of its services.

19.     As set forth more fully in the Hilty Declaration, the terms of the engagement are similar to the terms, both financial and otherwise, agreed to by Houlihan Lokey and other financial advisors and investment bankers in similar engagements, both in and outside of bankruptcy.  The terms of the Engagement Agreement were negotiated at arm's-length between

10

the Committee and Houlihan Lokey, and reflect the extensive work to be performed by Houlihan Lokey and the firm's advisory expertise.

## D.    Disinterestedness Of Professionals

20.    As set forth in more detail in the Hilty Declaration, and subject to the disclosures made therein, Houlihan Lokey is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, such that none of Houlihan Lokey, its officers, directors, managers, members, partners and employees:

      a.    is a creditor, an equity security holder or an insider of the Debtors;

      b.    is or was, within 2 years before the Petition Date, a director, officer, or employee of the Debtors; and

      c.    has an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or for any other reason.

21.    Houlihan Lokey conducted a review of its professional contacts for all entities listed on **Schedule 1** of the Hilty Declaration. The firm's review, completed under the supervision of the firm's Compliance Department, consisted of queries of an internal computer database containing names of individuals and entities that are present or recent and former clients of Houlihan Lokey in order to identify potential relationships. A summary of such present or recent representations that Houlihan Lokey was able to locate using its reasonable efforts is reflected in **Schedule 2** of the Hilty Declaration.

22.    Further, as part of its diverse practice, Houlihan Lokey appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-

interest in the Debtors' cases. Also, Houlihan Lokey has performed in the past, and may perform in the future, financial advisory and investment banking services for various attorneys and law firms in the legal community, and Houlihan Lokey and its employees have been represented by several attorneys and law firms in the legal community, some of whom are or may become involved in these proceedings. In addition, Houlihan Lokey has in the past, may currently and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to the Debtors and these cases. Based upon the Hilty Declaration, none of these business relationships creates interests materially adverse to the Debtors herein or the Committee in matters upon which Houlihan Lokey is to be employed, and none is in connection with these chapter 11 cases.

23.     Furthermore, except as disclosed in the Hilty Declaration and below, Houlihan Lokey has indicated that based on the results of its computer database research conducted to date, and to the best of its knowledge, neither Houlihan Lokey, nor any employee thereof, has any connection with the Debtors, their creditors, equity holders, or any other parties-in-interest (as reasonably known to Houlihan Lokey) or their respective attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee.

24.     Houlihan Lokey researched its client database to determine its connections (if any) with the following entities:

        a)     The Debtors and their affiliates;

        b)     The Debtors' shareholders holding 5% or more of the Debtors' equity securities;

        c)     The Debtors' current and former officers and directors;

        d)     The Debtors' professionals;

e)      The creditors' professionals;

f)      The Debtors' financing providers;

g)      The Debtors' indenture trustees;

h)      The Debtors' insurance providers;

i)      The Debtors' litigants;

j)      The Debtors' major competitors;

k)      Other participants in pools in which the Debtors participate;

l)      The Debtors' significant customers;

m)      The Debtors' joint-venture and profit sharing partners;

n)      The Debtors' utilities;

o)      The Debtors' vendors;

p)      The Debtors' landlords;

q)      Banks in which the Debtors have accounts;

r)      Union Representing Employees of the Debtors

s)      Other general unsecured creditors on the Debtors' list of fifty largest
        creditors;

t)      Major state and other relevant governmental entities;

u)      Committee members.

25.     Also, in accordance with section 504 of the Bankruptcy Code, Houlihan Lokey
has informed the Committee that there is no agreement or understanding between Houlihan
Lokey and any other entity, other than an employee of Houlihan Lokey, for the sharing of
compensation received or to be received for services rendered in connection with these chapter
11 cases.

26.     If Houlihan Lokey discovers any information that is contrary to or pertinent to the statements made in the Hilty Declaration, Houlihan Lokey will promptly disclose such information to this Court, creditors of the Debtors and the United States Trustee.

## E.     Retention Under Section 328(a) Of The Bankruptcy Code Is Appropriate

27.     Section 328(a) of the Bankruptcy Code provides, in relevant part, that a creditors' committee "with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a) of the Bankruptcy Code reflects a significant departure from prior bankruptcy practice related to the compensation of professionals, as it permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in In re National Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997) (citations omitted):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present Section 330 of the Bankruptcy Code, which provides that the court award to professional consultants the reasonable compensation based on relevant factors of time and comparable costs, etc. Under present Section 328, the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or creditors' committee).

Section 328(a) of the Bankruptcy Code provides courts with inherent flexibility to approve alternative fee structures to the customary hourly rate. The fee structure for this

14

engagement is similar to the fee arrangement approved by bankruptcy courts throughout the United States under section 328(a) of the Bankruptcy Code.

Pursuant to section 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the orders of this Court, Houlihan Lokey will apply to the Court for the interim and final allowance of compensation and reimbursement of expenses.

## F.      Waiver of Compliance With Requirements Regarding Time Entry Detail

28.      Consistent with its ordinary practice and the practice of investment bankers and financial advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, Houlihan Lokey does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals. Houlihan Lokey will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these cases. As Houlihan Lokey's compensation will be calculated and paid based on a fixed, deferred transaction fee (in addition to Monthly Fees), Houlihan Lokey requests that it not be required to file time records in accordance with Local Rule 2016-2 and the United States Trustee Fee Guidelines. Instead, notwithstanding that Houlihan Lokey does not charge for its services on an hourly basis, Houlihan Lokey will nonetheless maintain records (in summary format) of its services rendered for the Committee, including descriptions of those services, the time expended in providing those services and the individuals who provided those services, and will present such records together with its fee applications filed with the Court.

## NOTICE

29.      Notice of this Application has been given to the following parties:  (a) the Debtors; (b) the Office of the United States Trustee for the District of Delaware; and (c) any

15

persons who have filed a request for notice in the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 2002. The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR RELIEF REQUESTED

30.      No application for the relief requested herein has been made by the Committee to this or any other court.

## CONCLUSION

31.      WHEREFORE, the Committee respectfully requests that the Court enter an order under sections 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, substantially in the form attached hereto as "Exhibit C", approving the employment and retention of Houlihan Lokey pursuant to the terms of the Engagement Agreement and granting the Committee such other and further relief as is just, proper and equitable.


Dated: December 13, 2012

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF OVERSEAS SHIPHOLDING GROUP, INC., ET AL.**

DNB Bank ASA, New York Branch as Administrative Agent, solely in its capacity as Committee Chair and not in its individual capacity[1]

By: _____

Name: Sanjiv Nayar
Title:   Senior Vice President

---

[1] Except as otherwise provided in this Application, I have made the statements herein on information and belief and in reliance on statements made to me by the Committee and its professionals.