# EXHIBIT D

[Zabrocky Declaration]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

| | |
|---|---|
| *In re* | Chapter 11 |
| Overseas Shipholding Group, Inc., *et al.*, | Case No. 12-20000 (PJW) |
| Debtors.[1] | Jointly Administered |

-----------------------------------------------------------X

## DECLARATION OF LOIS K. ZABROCKY IN SUPPORT OF DEBTORS' MOTION FOR ORDER (A)(I) AUTHORIZING AND APPROVING SALE PROCEDURES; (II) AUTHORIZING AND APPROVING FORM AND MANNER OF NOTICE AND (B) AUTHORIZING AND APPROVING SALE OF CERTAIN OF THE DEBTORS' ASSETS, INCLUDING THE *OVERSEAS BERYL*, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES

I, Lois K. Zabrocky, do hereby make this declaration under penalty of perjury pursuant to

28 U.S.C. § 1746 and state as follows:

1.     I am Senior Vice President and Chief Commercial Officer of International Flag

Strategic Business of OSG.  I am duly authorized to make this Declaration on behalf of Overseas

Shipholding Group Inc. ("OSG") and submit this Declaration in support of the Debtors' Motion

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Overseas Shipholding Group, Inc. (7623); OSG International, Inc. (7117); OSG Bulk Ships, Inc. (2600); 1372 Tanker Corporation (4526); Africa Tanker Corporation (9119); Alcesmar Limited (5306); Alcmar Limited (5307); Alpha Suezmax Corporation (1684); Alpha Tanker Corporation (6063); Amalia Product Corporation (3808); Ambermar Product Carrier Corporation (8898); Ambermar Tanker Corporation (7100); Andromar Limited (5312); Antigmar Limited (5303); Aqua Tanker Corporation (7408); Aquarius Tanker Corporation (9161); Ariadmar Limited (5301); Aspro Tanker Corporation (4152); Atalmar Limited (5314); Athens Product Tanker Corporation (9565); Atlas Chartering Corporation (8720); Aurora Shipping Corporation (5649);Avila Tanker Corporation (4155); Batangas Tanker Corporation (8208); Beta Aframax Corporation (9893); Brooklyn Product Tanker Corporation (2097); Cabo Hellas Limited (5299); Cabo Sounion Limited (5296); Caribbean Tanker Corporation (6614); Carina Tanker Corporation (9568); Carl Product Corporation (3807); Concept Tanker Corporation (9150); Crown Tanker Corporation (6059); Delphina Tanker Corporation (3859); Delta Aframax Corporation (9892); DHT Ania Aframax Corp. (9134); DHT Ann VLCC Corp. (9120); DHT Cathy Aframax Corp. (9142); DHT Chris VLCC Corp. (9122); DHT Rebecca Aframax Corp. (9143); DHT Regal Unity VLCC Corp. (9127); DHT Sophie Aframax Corp. (9138); Dignity Chartering Corporation (6961); Edindun Shipping Corporation (6412); Eighth Aframax Tanker Corporation (8100); Epsilon Aframax Corporation (9895); First Chemical Carrier Corporation (2955); First LPG Tanker Corporation (9757); First Union Tanker Corporation (4555); Fourth Aframax Tanker Corporation (3887); Front President Inc. (1687);  Goldmar Limited (0772); GPC

1

For Order (A)(I) Authorizing And Approving Sale Procedures; (II) Authorizing And Approving

Form And Manner Of Notice And (B) Authorizing And Approving Sale Of Certain Of The

Debtors' Assets, Including The *Overseas Beryl*, Free And Clear Of All Liens, Claims, And

Encumbrances (the "Motion").[2]    Except as otherwise indicated, all facts set forth in this

---

Aframax Corporation (6064); Grace Chartering Corporation (2876); International Seaways, Inc. (5624); Jademar Limited (7939); Joyce Car Carrier Corporation (1737); Juneau Tanker Corporation (2863); Kimolos Tanker Corporation (3005); Kythnos Chartering Corporation (3263); Leo Tanker Corporation (9159); Leyte Product Tanker Corporation (9564); Limar Charter Corporation (9567); Luxmar Product Tanker Corporation (3136); Luxmar Tanker LLC (4675); Majestic Tankers Corporation (6635); Maple Tanker Corporation (5229); Maremar Product Tanker Corporation (3097); Maremar Tanker LLC (4702); Marilyn Vessel Corporation (9927); Maritrans General Partner Inc. (8169); Maritrans Operating Company L.P. (0496); Milos Product Tanker Corporation (9563); Mindanao Tanker Corporation (8192); Mykonos Tanker LLC (8649); Nedimar Charter Corporation (9566); Oak Tanker Corporation (5234); Ocean Bulk Ships, Inc. (6064); Oceania Tanker Corporation (9164); OSG 192 LLC (7638); OSG 209 LLC (7521); OSG 214 LLC (7645); OSG 215 Corporation (7807); OSG 242 LLC (8002); OSG 243 LLC (7647); OSG 244 LLC (3601); OSG 252 LLC (7501); OSG 254 LLC (7495); OSG 300 LLC (3602); OSG 400 LLC (7499); OSG America LLC (2935); OSG America L.P. (2936); OSG America Operating Company LLC (5493); OSG Car Carriers, Inc. (1608);OSG Clean Products International, Inc. (6056); OSG Columbia LLC (7528); OSG Constitution LLC (8003); OSG Courageous LLC (2871); OSG Delaware Bay Lightering LLC (4998); OSG Discovery LLC (8902); OSG Endeavor LLC (5138); OSG Endurance LLC (2876); OSG Enterprise LLC (3604); OSG Financial Corp. (8639); OSG Freedom LLC (3599); OSG Honour LLC (7641); OSG Independence LLC (7296); OSG Intrepid LLC (7294); OSG Liberty LLC (7530); OSG Lightering Acquisition Corporation (N/A); OSG Lightering LLC (0553); OSG Lightering Solutions LLC (5698); OSG Mariner LLC (0509); OSG Maritrans Parent LLC (3903); OSG Navigator LLC (7524); OSG New York, Inc. (4493); OSG Product Tankers AVTC, LLC (0001); OSG Product Tankers I, LLC (8236); OSG Product Tankers II, LLC (8114); OSG Product Tankers, LLC (8347); OSG Product Tankers Member LLC (4705); OSG Quest LLC (1964); OSG Seafarer LLC (7498);OSG Ship Management, Inc. (9004); OSG Valour Inc. (7765); Overseas Allegiance Corporation (7820); Overseas Anacortes LLC (5515); Overseas Boston LLC (3665); Overseas Diligence LLC (6681); Overseas Galena Bay LLC (6676); Overseas Houston LLC (3662); Overseas Integrity LLC (6682); Overseas Long Beach LLC (0724); Overseas Los Angeles LLC (5448); Overseas Martinez LLC (0729); Overseas New Orleans LLC (6680); Overseas New York LLC (0728); Overseas Nikiski LLC (5519); Overseas Perseverance Corporation (7817); Overseas Philadelphia LLC (7993); Overseas Puget Sound LLC (7998); Overseas Sea Swift Corporation (2868); Overseas Shipping (GR) Ltd. (5454); Overseas ST Holding LLC (0011); Overseas Tampa LLC (3656); Overseas Texas City LLC (5520); Pearlmar Limited (7140); Petromar Limited (7138); Pisces Tanker Corporation (6060); Polaris Tanker Corporation (6062); Queens Product Tanker Corporation (2093); Reymar Limited (7131); Rich Tanker Corporation (9147); Rimar Chartering Corporation (9346); Rosalyn Tanker Corporation (4557); Rosemar Limited (7974);Rubymar Limited (0767); Sakura Transport Corp. (5625); Samar Product Tanker Corporation (9570); Santorini Tanker LLC (0791); Serifos Tanker Corporation (3004); Seventh Aframax Tanker Corporation (4558); Shirley Tanker SRL (3551); Sifnos Tanker Corporation (3006); Silvermar Limited (0766); Sixth Aframax Tanker Corporation (4523); Skopelos Product Tanker Corporation (9762); Star Chartering Corporation (2877); Suezmax International Agencies, Inc. (4053);Talara Chartering Corporation (3744); Third United Shipping Corporation (5622); Tokyo Transport Corp. (5626); Transbulk Carriers, Inc. (6070); Troy Chartering Corporation (3742); Troy Product Corporation (6969); Urban Tanker Corporation (9153); Vega Tanker Corporation (3860); View Tanker Corporation (9156); Vivian Tankships Corporation (7542); Vulpecula Chartering Corporation (8718); Wind Aframax Tanker Corporation (9562). The Debtors' address for purposes of these chapter 11 cases is 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

declaration are based upon my personal knowledge, information supplied to be my other members of the Debtors' management and professionals, or learned from my review of relevant documents or upon my opinion based on my experience and knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2.      I have participated in or was informed of OSG's exploration of opportunities to sell the Asset that have since resulted in the Sale Procedures and Notice Procedures.

**The Asset**

3.      The Asset, the OVERSEAS BERYL, is an AFRAMAX-class vessel intended for the use of transportation of crude oil and like materials. Such vessels have an expected useful lifespan for this purpose of approximately twenty to twenty-five years. After this, it is customary to use the vessel as a stationary storage container, convert the vessel to use for purposes other than carrying crude oil or refined products, or else sell the vessel for its scrap value.

4.      During the time such vessels are used for transporting crude oil, they are required to maintain certifications as to their seaworthiness and construction. The certification process includes regular maintenance and inspection, and periodic visits to a dry dock for more complete repair work. As can be expected, the costs to maintain, repair, and operate such vessels generally increase over the expected usable life of the vessel.

5.      While the Asset has been well maintained and has the capability to continue to operate, the Debtor Seller has determined that the Asset does not suit its business plans and is unnecessary for the Debtor Seller's ongoing operations. Moreover, the Debtor Seller will incur increased maintenance, repair, and operational costs to maintain the Assets to the Debtor Seller's standards. Importantly, this Asset will require a mandatory fourth special survey/dry dock repair

in order to remain certified in class after May 2014.  The estimated cost of such a procedure is approximately $3 million.

6.      In addition to the upcoming $3 million in costs attendant to certify the Asset, the Debtors face the obstacle of the impending monsoon season in South Asia.  Maximizing the price received for the Asset in the South Asian scrap market requires a sale to be completed and close far enough in advance of the monsoon season to allow the eventual purchaser adequate time to process the vessel before the traditional seasonal break that occurs during the monsoon season in the industry.  If the Sale does not close in sufficient time for the purchaser to process the vessel prior to monsoon season, the Debtor Seller would likely be forced to maintain the Asset which would require the Vessel to undergo its fourth special survey/dry dock repair.

7.      Moreover, in the past several years there has been a surplus of vessels like the Asset available in the charter market relative to the number of would-be charterers.  As a result, vessel owners face stiff competition within the charter market, and significant downward pressure on revenues realized through chartering.  This is because, generally speaking, charterers prefer to engage newer ships when given the choice, and the relative surplus of vessels available for charter has provided ample opportunity for charterers to exercise this preference.  The result is a reduction in the number of charterers engaging older vessels, such as the Asset, and an increase in idle time between voyages.  In addition, like other owners of certain older vessels, the Debtor Seller currently faces (and will continue to face) significant market pressure from charterers who prefer to engage newer vessels for their charters.

8.      After due consideration and given the Asset's age and condition (and facing a $3 million survey/dry dock repair process in the near term), the Debtor Seller has concluded that the

best way to maximize the Asset's value is to sell it into the scrap vessel market in South Asia, where scrap values are relatively high.

**The Market for the Asset**

9.      There are a relatively limited number of parties that would have both the interest and financial capability to purchase the Asset in the scrap vessel market in South Asia. Pertinent details of the Asset are readily ascertainable in the scrap market, and word of the Debtor Seller's offer to sell the Asset is likely to spread throughout this market quickly. Beyond potentially interested purchasers identified through the scrap brokers that the Debtor Seller intends to contact, additional interested purchasers may come forward on their own initiative. Moreover, the approximate value of a vessel is readily ascertainable by reference to the ship's size and weight and the spot scrap steel market price. Precisely because the Asset and its scrap value are, or can easily be, known within the market, interested purchasers are unlikely to require a stalking-horse bid to aid them in properly valuing the Asset. Indeed, the Debtor Seller expects all the bids to be within a very narrow range. Finally, vessel sales within this market typically occur based on a single standardized form agreement subject to a number of relatively standard modifications. This greatly lowers the barrier to entry for interested purchasers, and for the Debtor Seller to evaluate competing bids provided by such purchasers.[3] Moreover, it will allow the Debtor Seller to execute the sale quickly once an acceptable bid within the very narrow expected range of value is received.

10.      The Debtor Seller believes that its ability to execute an Agreement and close a sale promptly is critical to its ability to maximize the value of the Asset. The Debtor Seller believes that requiring the likely purchasers of the Asset in the scrap market to execute an

---

[3]      The Debtor Seller does intend to modify the standard form to reflect a sale free and clear of liens, claims and encumbrances in order to dispel any discomfort a potential buyer may have due the Seller's debtor status.

agreement and then seek Court approval (causing an approximate 30 day delay before any possibility of closing) will likely depress the value to be achieved through the Sale.

11.    Accordingly, the Debtor Seller proposes to offer the Asset for sale without a traditional "stalking horse" bidder or formal auction process. For the reasons set forth above, the Debtor Seller believes that the scrap vessel market and the customary method for vessel sales within this market present a compelling reason to move forward without a stalking horse bidder or formal auction process, while still allowing it to achieve the highest and best value for the Debtor Seller's estate.

12.    The Debtor Seller believes that a sale pursuant to the Sale Procedures described below will provide the best opportunity to maximize the value of the Assets.

**The Sale and Notice Procedures**

13.    The Debtor Seller submits that the opportunity for bidding and Sale embodied in the Sale Procedures will generate the highest or otherwise best offer for the Asset and therefore is designed to maximize the value of the Asset.

14.    The Debtor Seller believes a prompt sale process is the best way to maximize the value of the Asset for the benefit of its estate, creditors, and other stakeholders. Accordingly, the Debtor Seller, in its business judgment, has concluded that the proposed Sale Procedures described herein are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale of the Asset.

15.    The Debtor Seller believes that a prompt sale of the Asset conducted pursuant to the Sale Procedures presents the best opportunity to realize the maximum value of the Asset to the Debtor Seller's estate and its creditors. The Debtor Seller further believes that the benefit to the Debtor Seller's creditors will be adversely affected absent an immediate sale because, as

described above, the Asset is declining in value over time and requires substantial additional investment in the near term to remain commercially viable.

16.     The Debtor Seller submits that the results of the sale process will be the product of good faith, arm's length negotiations with respect to the price and other terms of the Sale between the Debtor Seller and highest and best bidder at the conclusion of the sale process.

*[Remainder of Page Intentionally Blank]*

I declare under penalty of perjury under the laws of the United Sates that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: _____, 2014                                 _____
                                                              Lois K. Zabrocky

*[Signature Page for Declaration of Lois K. Zabrocky in Support of Debtors' Motion For Order (A)(I) Authorizing And Approving Sale Procedures; (II) Authorizing And Approving Form And Manner Of Notice And (B) Authorizing And Approving Sale Of Certain Of The Debtors' Assets, Including Overseas Beryl, Free And Clear Of All Liens, Claims, And Encumbrances]*