## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| Overseas Shipholding Group, Inc., *et al.*, | : | Case No. 12-20000 (MFW) |
| | : | |
| Reorganized Debtors.[1] | : | Jointly Administered |
| | : | |
| | : | **Hearing Date:  March 25, 2015 at 11:30 a.m. (ET)** |
| | : | **Objections Due:  March 9, 2015 at 4:00 p.m. (ET)** |
| | : | |

----------------------------------------------------------X

## REORGANIZED DEBTORS' MOTION TO ENFORCE THE CONFIRMATION ORDER AND IMPOSE SANCTIONS AGAINST CLAIMANT MASON T. SOUTH AND HIS ATTORNEYS

Overseas Shipholding Group, Inc. ("OSG") and certain of its affiliates, as reorganized debtors (collectively, the "Reorganized Debtors," and prior to emergence, the "Debtors," as applicable) in the above-captioned proceeding (these "Cases"), hereby move (the "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as Exhibit A, (i) enforcing the *Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint Plan of Reorganization of Overseas Shipholding Group, Inc., et al., Under Chapter 11 of the Bankruptcy Code* (D.I. 3683, the "Confirmation Order"), entered by this Court on July 18, 2014, against claimant Mason T. South ("South"), and his attorneys, the law firms of  Jaques Admiralty Law Firm P.C. ("Jaques") and Motley Rice LLC ("Motley Rice," and together with

---

[1]    The Reorganized Debtors in these Chapter 11 cases, along with the last four digits of each Reorganized Debtor's tax identification number, are:  Overseas Shipholding Group, Inc. (7623); OSG International, Inc. (7117); OSG Bulk Ships, Inc. (2600); Crown Tanker Corporation (6059); DHT Ania Aframax Corp. (9134); Fourth Aframax Tanker Corporation (3887); Juneau Tanker Corporation (2863); Luxmar Tanker LLC (4675); Ocean Bulk Ships, Inc. (6064); OSG Car Carriers, Inc. (1608); OSG Lightering LLC (0553); OSG Maritrans Parent LLC (3903); OSG Ship Management, Inc. (9004); Overseas Los Angeles LLC (5448); Overseas ST Holding LLC (0011)Vivian Tankships Corporation (7542).  The mailing address of the Reorganized Debtors is: 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019.

Jaques, "South Counsel"), who have recently commenced an action in the New York Supreme Court for New York County (the "New York Court") against OSG styled Mason T. South, *et al.* v. Chevron Corporation, *et al.*, NY Civ. Ct. Index No. 190029/2015 (the "South Case"), in violation of the Confirmation Order and the *First Amended Joint Plan of Reorganization of Overseas Shipholding Group, Inc., et al., Under Chapter 11 of the Bankruptcy Code* (D.I. 3663, the "Plan"), and (ii) imposing sanctions on the South Counsel for such knowing and willful violation of this Court's orders in the form of the reasonable, documented costs and expenses of the Reorganized Debtors in defending the South Case in the New York Court and prosecuting this Motion.  In support of this Motion, the Reorganized Debtors submit the *Declaration of Kathryn Schultea in Support of the Reorganized Debtors' Motion to Enforce the Confirmation Order and Impose Sanctions Against Claimant Mason T. South and His Attorneys* (as attached hereto as Exhibit B, the "Schultea Declaration").  In further support of the Motion, the Reorganized Debtors, by and through their undersigned counsel, respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1.    The South Case asserts claims against the Reorganized Debtors that were both specifically disallowed by final order of this Court and discharged pursuant to the Plan and Confirmation Order.  During these cases, South filed a claim against the Debtors that he was exposed to asbestos on the Debtors' vessels, as a result of which he was "diagnosed with an asbestos-related disease."  Years before the Petition Date, South had filed a complaint against the Debtors' affiliates similarly alleging that as a result of claimed exposure to asbestos, "[South] suffers . . . pulmonary diseases inclusive of . . . mesothelioma."  Original Complaint at 4.  That complaint was voluntarily dismissed without prejudice, and the statute of limitations on the

---

[2]    Capitalized terms used but not defined in the Preliminary Statement have the meanings ascribed to them herein.

South Claim had run well before the Petition Date.  Accordingly, this Court entered its Expungement Order, specifically disallowing and expunging the South Claim with prejudice. The Expungement Order has long since become final and non-appealable

2. Further, the Plan and Confirmation Order discharge of any and all claims based upon any act, omission or activity of any kind that occurred before the Effective Date, and permanently enjoins claimants from commencing or continuing any action or proceeding to pursue such claims against the Reorganized Debtors.  Confirmation Order ¶¶ 150, 156.  While South's counsel received extensive notice of the Plan and its solicitation, confirmation and effectiveness, no objection or other response was filed and the Confirmation Order has also become final and non-appealable.

3. Notwithstanding the clear and unambiguous terms of these orders, South Counsel have commenced an action in New York state court alleging that South has been diagnosed with mesothelioma as a result of the *very same alleged pre-petition exposure to asbestos* that was the basis for the South Claims this Court has already disallowed, expunged and discharged.  The filing and prosecution of the South Case flagrantly violates both the discharge and injunction provisions of the Confirmation Order and this Court's Expungement Order that specifically disallowed the South Claim as time-barred.  While South Counsel contend that the South Case may somehow continue against the Reorganized Debtors because South was allegedly only diagnosed with mesothelioma after the Effective Date, this ignores that any such diagnosis stems from the very same pre-petition exposure that was the basis for the South Claim against the Debtors (and that mesothelioma was included in the allegations in the Original Complaint filed before the Petition Date).  Under binding Third Circuit precedent, any and all claims resulting from such exposure have been disallowed and expunged.  The fact that claims relating to the

diagnosis may not have accrued until after the Effective Date under non-bankruptcy law is simply irrelevant.  Indeed, in ruling on other omnibus objections to substantially identical asbestos-related claims filed by Jaques, this Court already expressly rejected arguments that such claims should be preserved as contingent claims given the possibility that second injuries could manifest themselves at a later date.  This Court has thus fully and final resolved the claims now asserted in the South Case and the arguments on which they are purportedly based.

4.    Moreover, to permit the continued prosecution of the South Case would fundamentally threaten the foundations on which the Plan was confirmed.  During the course of the Debtors' cases, this Court disallowed and expunged more than 6,000 claims substantially identical to the South Claim, many of which lacked confirmed insurance coverage.  The Debtors determined that by expunging and discharging such claims, they had reduced their potential asbestos-related exposure to a sustainable level such that they could reinstate remaining asbestos claims without resort to an asbestos trust or channeling injunction.  If instead, South and more than six thousand other claimants like him may pursue the Reorganized Debtors in state courts around the country, the Reorganized Debtors may face levels of exposure that are both unsustainable and contrary to the basis on which the Plan was formulated.

5.    For these reasons, the Reorganized Debtors request that this Court enforce the Confirmation Order against South by ordering the discontinuation of the South Case against OSG, and imposing sanctions on South Counsel in the amount of the Reorganized Debtors' reasonable, documented costs of filing this Motion and responding to the reckless and frivolous South Case.

## JURISDICTION

6.      This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Indeed, this Court specifically retained jurisdiction in the Confirmation Order to enforce the provisions of the Plan and Confirmation Order.  Confirmation Order ¶ 177.

7.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

8.      On November 14, 2012, (the "Petition Date"), the Debtors voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Before emergence from this Court's protection, the Debtors operated their businesses and continued to manage their properties as debtors-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

9.      On April 30, the Bankruptcy Court entered an order (D.I. 1146) setting the bar date in these Cases as May 31, 2013 (the "Bar Date").

10.     On July 18, 2014, the Court confirmed the Debtors' Plan.  Relevant excerpts of the Plan are attached as Exhibit C to this Motion.  The Plan includes the following key provisions:

- First, the Plan states that "all Persons and Entities shall be precluded from asserting against" OSG any claim "based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date."  Plan § 11.4 (the "Discharge").

- Second, the Plan states that "after the Effective Date all Persons . . . who have held, hold, or may hold Claims against . . . Debtors are . . . permanently enjoined from taking any of the following actions against any of the Debtors, the Reorganized Debtors or their property on account of such Claims . . . (A) commencing or continuing, in any manner or in any place, any action or other proceeding; . . . (E) commencing or continuing, in any manner or in any place, any action that does not

comply with or is inconsistent with the provisions of this Plan." Plan § 11.7 (the "<u>Injunction</u>").

- <u>Third</u>, the Plan provides that pursuant to sections 105(c) and 1142 of the Bankruptcy Code, the Bankruptcy Court retains jurisdiction over "all matters arising under or related to the Chapter 11 Cases and this Plan" including jurisdiction to issue injunctions to "restrain interference . . . implementation or enforcement of this Plan or the Confirmation Order" and to "enforce all orders, judgments, injunctions, releases . . . entered in connection with the Chapter 11 Cases." Plan §§ 12(i), (n).

11.    The Confirmation Order was also docketed on July 18, 2014. Relevant excerpts of the Confirmation Order are attached as <u>Exhibit D</u> to this Motion. The Confirmation Order contains the following key provisions:

- <u>First</u>, the Confirmation Order affirms and sustains the Plan's Discharge, stating "all Persons and Entities shall be precluded from asserting against" OSG any claim "based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date." Confirmation Order ¶ 150.

- <u>Second</u>, the Confirmation Order affirms and sustains the Plan's Injunction, stating "after the Effective Date all Persons . . . who have held, hold, or may hold Claims against . . . the Debtors are . . . permanently enjoined from taking any of the following actions against any of the Debtors, the Reorganized Debtors or their property on account of such Claims . . . (A) commencing or continuing, in any manner or in any place, any action or other proceeding; . . . (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan." Confirmation Order ¶ 156.

- <u>Third</u>, the Plan was confirmed in its entirety and incorporated into the Confirmation Order by reference. The failure to discuss or reference a particular provision of the Plan within the Confirmation Order, therefore, does not diminish or impair the effectiveness of said provision of the Plan. Confirmation Order ¶ 173.

- <u>Fourth</u>, the Court directed the Debtors, in accordance with Bankruptcy Rules 2002 and 3020(c), to serve, by hand, overnight courier or First Class mail, a Notice of Effective Date of the Plan, within a reasonable period of time after such effectiveness occurred. Confirmation Order ¶ 175.

- <u>Fifth</u>, the Court determined that mailing the Notice of Effective Date in the time and manner established by the Confirmation Order constituted "good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no other or further notice of confirmation or the occurrence of the Effective Date is necessary." Confirmation Order ¶ 176.

- <u>Sixth</u>, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Court retained jurisdiction over all matters arising out of, or related to, the Chapter 11 cases, the Debtors, the Reorganized Debtors and the Plan, including jurisdiction over those matters set out in Article 12 of the Plan.  Confirmation Order ¶ 177.

12.      The Effective Date of the Plan occurred on August 5, 2014.  In accordance with the Plan and Confirmation Order, the Debtors thus filed the Notice of Effective Date.  On August 11, 2014, Darlene Calderon of Kurtzman Carson Consultants LLC ("<u>KCC</u>"), the Debtors' servicing agent, filed an Affidavit of Service (D.I. 3780, the "<u>Affidavit of Service</u>") stating that on August 5, 2014, employees of KCC served via First Class mail a copy of the Notice of Effective Date on Jaques.[3]

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. The Debtors' Significant, Long-term Efforts to Assess and Winnow the Asbestos Claims

13.      On May 29 and 30, 2013, just days before the Bar Date, Jaques, on behalf of its clients (including South), filed three Proofs of Claim (the "<u>Consolidated Proofs of Claim</u>"), comprising approximately 6,000 individual asbestos-related claims.  The Consolidated Proofs of Claim were not filed in respect of claims relating to cases against the Debtors, but rather were filed in respect of claims relating to proceedings against non-Debtor OSG affiliates.  Moreover,

---

[3]      In fact, Jaques was added to the Debtors' core Bankruptcy Rule 2002 service list on November 19, 2012—just days after the Petition Date—and as such, the Debtors served abundant notice on Jaques throughout these Cases, including with regard to the filing and confirmation of the Plan, the Effective Date and all related deadlines.  <u>See, e.g.</u>, Affidavit of Service of Darlene Calderon re: Notice of (I) Filing of Proposed Disclosure Statement, Solicitation Procedures Motion and Deadline and Procedures for Filing Objections Thereto and (II) Hearing on Disclosure Statement, dated  March 12, 2014 (Docket No. 2617); Affidavit of Service of Lydia Pastor Nino re: Notice of (I) Approval of Disclosure Statement, (II) Record Date for Rights Offering and (III) Suspension of Trading of Old OSG Equity Interests, dated May 28, 2014 (Docket No. 3444); Affidavit of Service of David E. Hartie re: Solicitation Materials, dated June 23, 2014 (Docket No. 3518).  Similarly, Motley Rice was served with no fewer than six notices, including with respect to the Disclosure Statement, the Plan, the Confirmation Hearing, and the Notice of Effective Date.  <u>See</u> D.I.s 2617, 2923, 3164, 3444, 3518, and 3780.

the overwhelming majority of the claims did not relate to proceedings that were pending on the Petition Date, but instead asserted liability based on actions that had long before been voluntarily dismissed.

14.     The Consolidated Proofs of Claim make up the bulk of the more than 7,000 Claims that allege claims arising out of asserted pre-petition exposure to asbestos (the "Asbestos Claims").  Immediately after the filing of the Consolidated Proofs of Claim, the Debtors and their advisors began comprehensively reviewing and reconciling these claims, in particular identifying categories of claims that could be targeted for disallowance.  This nearly two-year process remains ongoing and has led to the filing of twenty-six asbestos-related Omnibus Objections, which have resulted in the disallowance and expungement, with prejudice, of more than 6,000 of the Asbestos Claims.[4]

**B. Resolution of the Asbestos Claims as a Foundation for the Plan**

15.     Given the sheer number of Asbestos Claims and the unknown scope of potential liability that these claims represented, the Debtors realized from the time they first began discussing plan proposals that grappling with the Asbestos Claims would be a significant gating item to formulating and confirming a plan of reorganization.  In particular, the Debtors determined that they either had to winnow the asbestos-related claims to a manageable level for the Reorganized Debtors, or if that proved impossible, consider establishing an asbestos trust. For this reason, in the Debtors' Second Motion Pursuant to Section 1121(d)(1) of the Bankruptcy Code to Extend the Exclusive Periods to (i) File a Chapter 11 Plan and (ii) Solicit Acceptances Thereof (D.I. 1589, the "Second Exclusivity Motion"), the Debtors identified "claims

---

[4]     See *Various Orders Granting Omnibus Objections (Substantive)* (D.I. 1958, 1959, 2049, 2050, 2051, 2168, 2170, 2172, 2173, 2723, 2726, 2727, 2728, 2729, 2731, 2793, 2903, 2904, 3023, 3024, 3244, 3257, 3670, 4103).

reconciliation," including the "thousands of asbestos-related claims filed both with respect to alleged exposure on the Debtors' vessels and vessels owned or leased by former non-Debtor affiliates" as one of the necessary "steps to formulate and implement a successful plan of reorganization."  Second Exclusivity Motion ¶ 35.

16.      Additionally, in the Debtors' third motion to extend exclusivity (D.I. 2069, the "Third Exclusivity Motion"), the Debtors reiterated that determining their "asbestos-related liability" was one of the "key gating items that must be resolved before a plan of reorganization can be properly finalized."  Third Exclusivity Motion ¶ 1.  This rationale was further developed in the Debtors' reply in further support of the Third Exclusivity Motion (D.I. 2142, the "Third Exclusivity Reply"), in which the Debtors stated, "Because these claims related to alleged asbestos exposure cannot be discharged through a traditional claims reconciliation process, or simply left to be resolved by this Court after a plan is confirmed, the Debtors must better quantify the amount of timely asserted asbestos claims before a plan can be meaningfully formulated around that remaining asserted liability."  Third Exclusivity Reply ¶ 14.  The Debtors further reinforced this point at the December 19, 2013 omnibus hearing at which the Third Exclusivity Motion was argued:  "[O]n the asbestos claims . . . in terms of it being a gating item, until we have a series of rulings from the Court, as we have today, we're not able to formulate that sort of an estimated value or make a determination about whether some sort of a trust or other mechanism would ever even be required."  Tr. of Oral Argument at 60:15-22, In re Overseas Shipholding Group, Inc., et al., Case No. 12-20000 (PJW) (Bankr. D. Del. Dec. 19, 2013) (D.I. 2231) (the "December Hr'g Tr.")

17.      Finally, by the February 21, 2014 filing of the Debtors' fourth motion to extend exclusivity (D.I. 2509, the "Fourth Exclusivity Motion")—many months after plan negotiations

had commenced—the Debtors at long last felt that they had "reached a juncture in these Chapter 11 cases where the nature and quantum of [Asbestos Claims] is sufficiently known to allow the Debtors to propose a plan of reorganization."  Fourth Exclusivity Motion ¶ 29.  In particular, because the Debtors were able to successfully disallow and expunge the majority of the asbestos-related claims filed against them, they determined that they were able to reinstate the remaining asbestos-related claims that had not otherwise been expunged and discharged without resort to a trust or channeling injunction.  This determination was particularly crucial where the Debtors were unable to confirm insurance coverage for many of the liabilities asserted in the expunged claims.  See Disclosure Statement § IV(D)(5) ("The Debtors thus far have been unable to confirm coverage for certain of the Claims that have been the subject of Asbestos Claims Objections.").

18.     As such, shortly thereafter, on March 7, 2014, the Debtors filed their first joint plan of reorganization (D.I. 2593).  Importantly, this plan of reorganization (and all subsequent amended plans of reorganization, including the confirmed Plan) did not include provision for a section 524(g) trust because, given the significant universe of asbestos-related claims filed in these Cases as well as the Debtors' extensive efforts to comprehend, sort and winnow these claims, the Debtors' anticipated exposure to asbestos-related liability did not necessitate such a trust.  Indeed, in reliance on the finality of this Court's orders, the Debtors believed that the more limited universe of asbestos-related claims that had not been expunged represented a sustainable level of risk and exposure for the reorganized debtors.

### C.  The Pre-Petition Claims Brought by South

19.     As noted above, on May 29, 2013, Jaques filed a proof of claim against OSG in the amount of approximately $130 million (Claim No. 625, the "South Claim") on behalf of hundreds of claimants alleging asbestos-related injuries.  One of these claimants was South.

20.     In response to the South Claim, on October 22, 2013, the Debtors filed the *Tenth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. Bankr. L. R. 3007-1 (No Liability Asbestos Claims)* (D.I. 1917) (the "Tenth Omnibus Objection").  As discussed in the Tenth Omnibus Objection, the South Claim and the hundreds of claims filed with it all sought to revive decades-old lawsuits against current and former non-debtor affiliates of the Debtors—not the Debtors themselves—that had been voluntarily dismissed years before the Petition Date pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  The complaint in the lawsuit underlying the South Claim (as attached hereto as Exhibit E, the "Original Complaint") states, "As a direct and proximate result of said exposure to asbestos aboard the said vessels . . . [South] suffers . . . pulmonary diseases inclusive of . . . mesothelioma."  Exhibit E at 4.

21.     As the Debtors stated in the Tenth Omnibus Objection, because the applicable federal maritime law specifies a uniform three-year statute of limitations with respect to the Claims, which was not tolled during or after the pendency of the dismissed lawsuits, the South Claim and the claims filed with it had long been time-barred.  Jaques did not file a response to the Tenth Omnibus Objection.  Therefore, on November 11, 2013, the Bankruptcy Court entered its *Order Granting Debtors' Tenth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. Bankr. L. R. 3007-1 (No Liability Asbestos Claims)* (D.I. 2051, the "Expungement Order").

22.     The Expungement Order disallowed and expunged the South Claim and all other claims filed with it in full, with prejudice, finding that:  "The Proofs of Claim fail to state a valid basis for the Claims under Section 502(b)(1) of the Bankruptcy Code because the applicable statute of limitations expired before the Petition Date with respect to the Claims asserted in the Proofs of Claim.  As all of the Proceedings relating to the Claims were brought by the Claimants in or before 1999 and were voluntarily dismissed, the limitations period was not tolled during the pendency of these Proceedings.  Nor was the limitations period otherwise tolled between such dismissal and the Petition Date.  As such, the applicable three-year statute of limitation bars assertion of the Claims against the Debtors."  Expungement Order at 3.  The Expungement Order also provided that the Bankruptcy Court "shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this [o]rder."  Expungement Order ¶ 5.  Jaques did not attempt to appeal the Expungement Order, and it is now final and non-appealable.

23.     Notably, following entry of the Expungement Order, Jaques contested a series of claims objections to substantially identical claims, arguing that proofs of claim substantially identical to the South Claim were timely to the extent they represented contingent claims for as-yet-unmanifested injuries.  However, none of the Consolidated Proofs of Claim stated contingent claims—all of them alleged only present injury—as did the underlying complaints.  See, e.g., Exhibit E at 4 ("[South] *suffers* . . . pulmonary diseases inclusive of . . . mesothelioma." (emphasis added)).  Additionally, Jaques failed to introduce any evidence (not even an affidavit) supporting its new allegation (refuted by the plain language of the Consolidated Proofs of Claim and underlying complaints) that certain of the proofs of claim such as the South Claim were for contingent, future injuries.  Because of these facts, the Court expressly rejected this argument.

<u>See</u> December Hr'g Tr. at 26:20-23 ("I must say, I read the claimants' reply at least three times, and . . . I couldn't make any sense of it. And the same goes with respect to [South Counsel's] oral presentation. I find no merit to it, and I'm going to grant the motion to deny those claims.").

**D. Re-Assertion of the Discharged South Claims Against the Reorganized Debtors**

24.     On January 13, 2015, Jaques emailed the Reorganized Debtors' counsel, asserting (again) that South had been diagnosed with mesothelioma, and requesting "consent to lift the injunction with respect to this one client only." <u>See</u> Exhibit H. The Reorganized Debtors responded, explaining that because the South Claim had been fully and finally disallowed with prejudice, any causes of action against the Reorganized Debtors based on the injuries alleged in the South Claim (including mesothelioma) were barred by the Expungement Order and the discharge and injunction provisions of the Confirmation Order. <u>Id</u>.

25.     After a telephonic discussion in which the Reorganized Debtors requested support for Jaques' assertion that the South Claim could be asserted, Jaques sent the Reorganized Debtors' counsel an email on February 6, 2015, citing non-bankruptcy law on the accrual of claims relating to second diseases. Exhibit H. This email stated, "I am certain you know this and your position rests on the bankruptcy code definition of a claim and the cases discussing exposure." <u>Id.</u> Although Jaques had failed at any point to object to or respond to the Plan and Confirmation Order, the email continued, "Not making some provision for second injuries which manifest after the petition date is not an issue I can ignore." <u>Id.</u>

26.     On February 4, 2015, a full six months after the Effective Date, Jaques filed the South Case in the New York Court, naming OSG and four other unrelated entities as

13

defendants.[5]  The complaint in the South Case (attached hereto as Exhibit F, the "Complaint"),

much like the Original Complaint, states in relevant part that the action relates to exposure to

asbestos that South allegedly experienced "[d]uring the years 1945 through 1982," Exhibit F ¶ 2,

as a result of which "[South] contracted an asbestos-related disease in the form of a cancer,

commonly known as mesothelioma," as well as other alleged injuries.  Id. ¶ 20.

27.     On February 13, 2015, counsel to OSG sent a letter to South Counsel (as attached

hereto as Exhibit G, the "OSG Letter") advising them that given Jaques' extensive involvement

in these Cases, the South Case represented a knowing and willing violation of the Expungement

Order and the Confirmation Order.  Exhibit G at 1-2.  The OSG Letter also explained that under

binding Third Circuit precedent, South Counsel's reliance on non-bankruptcy law concerning the

accrual of causes of action relating to a second-disease or second-diagnosis did nothing to alter

the effect of the Discharge and Injunction.  Id. at 2.  The OSG Letter also advised Jaques that

service of the summons on OSG, which would trigger the running of OSG's time to answer or

otherwise respond to the South Case, would represent a separate and additional violation of the

Expungement Order and Confirmation Order.  Exhibit G at 3.

28.     On February 19, 2015, South Counsel nonetheless served OSG with the

summons.  The Summons contained a notice of deposition for South, scheduled for February 26,

2015.  Counsel for the Reorganized Debtors has requested that OSG's time to answer the

complaint in the South Action be tolled, and the deposition be rescheduled, pending a

determination by this Court of the issues raised in this Motion.   See Exhibit H.  While the parties

have agreed to extend OSG's time to answer, South Counsel was willing to adjourn the

---

[5]     For the avoidance of doubt, this Motion seeks discontinuance of the South Case only as against OSG.  Grant of this Motion would have no impact on South's claims as against four other unrelated defendants named in the South Case.

deposition of Mr. South only to the extent that it reserved its rights to nonetheless use the results

of that deposition against OSG at trial, leaving OSG with the catch-22 of either participating in

the deposition to preserve its rights in a proceeding that has been discharged or of waiving

participation and nonetheless risking having the deposition used against it.  Id.

## RELIEF REQUESTED

29.     By this Motion, the Reorganized Debtors request entry of an order enforcing the

Confirmation Order by ordering South to discontinue the South Case as against OSG with

prejudice; finding that the Claims against OSG are barred under article 13.5 of the Plan,

incorporated by reference in the Confirmation Order; and imposing sanctions against South

Counsel in the amount of OSG's reasonable and documented cost and expense of filing this

motion and responding to the South Case.

## BASIS FOR RELIEF REQUESTED

### A. The South Case Is a Flagrant Violation of Both the Expungement Order and the Confirmation Order

30.     As an initial matter, the injuries and diagnosis alleged in the South Case clearly

stem from the very same alleged exposure that underlied the South Claim, which the Bankruptcy

Court already disallowed and expunged in full.  Compare South Claim at Exhibit A ("While

aboard [OSG's] vessel(s), [South] was exposed to asbestos which gives rise to claims premised

on . . . asbestos related disease") with Complaint ¶ 12 ("[South] was required by [OSG] to

perform duties which resulted in his constant exposure to asbestos friable fibers . . . resulting in

harm to him, including a form of cancer commonly known as mesothelioma").  It is therefore

hard to see the South Case as anything other than a thinly-veiled attempt to pursue the expunged

South Claim through a new venue, and thus a deliberate contravention of both the Expungement

Order and the Bankruptcy Court's retained jurisdiction.  See supra ¶ 17.

31.     However, even if the South Case somehow encompassed a separate claim from the South Claim (which it does not), it would still constitute a knowing and willing violation of the Plan's Discharge and Injunction, as affirmed and sustained by the Confirmation Order.  As noted above, the Plan provides that "all Persons and Entities shall be precluded from asserting against" OSG any claim "based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature *that occurred prior to the Effective Date*." Confirmation Order ¶ 150 (emphasis added).  Further, the Confirmation Order directs that "all Persons or Entities who have held, hold, or *may hold* Claims against" OSG are "permanently enjoined from. . . commencing or continuing, in any manner or in any place, any action or other proceeding" to enforce such claims.  Confirmation Order ¶ 156 (emphasis added).

32.     There can be no doubt that the South Case falls squarely within the ambit of both these clauses.  First, the South Case acknowledges that it arises from alleged *pre-petition* exposure to asbestos, see Complaint ¶ 2, and therefore has its operative basis in acts and activities "that occurred prior to the Effective Date."  Confirmation Order ¶ 150.  Moreover, that certain of South's claimed injuries allegedly were not diagnosed until after the Effective Date is irrelevant, as the Plan's Injunction permanently enjoys claimants who "may hold claims" from asserting such claims after the Effective Date.  Confirmation Order ¶ 156.  For these reasons, the South Case is a flagrant and purposeful violation of the explicit terms of the Confirmation Order, which this Court must move to enforce against South and Jaques.

**B.  Third Circuit Precedent and This Court's Own Decisions in These Cases Hold That the So-Called "Second-Disease Rule" Cannot Revive South's Claim**

    i.     Binding Precedent Establishes that South's Bankruptcy Claim Arose at the Time of His Pre-Petition Exposure

33.     While South Counsel have indicated an intent to rely on the fact that South's alleged diagnosis occurred shortly after the Effective Date, the Third Circuit has clearly and

repeatedly held in cases entirely analogous to the South Case that bankruptcy law—and not any non-bankruptcy law, including the so-called "second-disease rule"—governs post-confirmation claims.[6]  Specifically, in In re Grossman's Inc., the Third Circuit examined a claim for injuries that arose post-confirmation as a result of alleged pre-petition exposure to asbestos.  The court first noted that its then-existing "accrual" test, which provided that a post-confirmation claim is deemed to arise when the cause of action accrued under non-bankruptcy law (as the second-disease rule would have it), had received "universal disapproval" among other circuits.  In re Grossman's Inc., 607 F.3d 114, 121 (3d Cir. 2010).  The Third Circuit further noted that the accrual test is in "apparent conflict with the Bankruptcy Code's expansive treatment of the term claim"—a term that the Supreme Court has noted has "the broadest available definition."  In re Grossman's Inc., 607 F.3d 114 at 121 (internal quotation marks omitted).  Moreover, the accrual test contradicts the intended purpose of the bankruptcy code's discharge and injunctions provisions, as "it is apparent from the legislative history of § 524(g) of the Bankruptcy Code that Congress was concerned that future claims by presently unknown claimants could cripple the debtor's reorganization." In re Grossman's at 126-27.  For these reasons, the Third Circuit squarely overruled the accrual test and held that all post-confirmation claims alleging pre-petition exposure to asbestos shall be deemed to have arisen "[on] the date [claimant] alleged that [defendant]'s product exposed her to asbestos."  In re Grossman's at 125.[7]  Under

---

[6]     The "second-disease rule" (also known as the "two-disease rule") is a doctrine in certain jurisdictions that entitles plaintiffs who have already filed a claim for asbestos-related injuries to a new and separate cause of action that accrues when they manifest or are diagnosed with certain new injuries arising from the same exposure.

[7]     In re Grossman's was reaffirmed, in relevant part, by the Third Circuit's decision in Wright v. Corning, 679 F.3d 101 (3d Cir. 2012).  Wright only modified the holding of In re Grossman's in two minor ways:  first, Wright extended In re Grossman's holding to include post-petition, pre-confirmation exposure; second, Wright held that the accrual test will apply to claimants in cases in which confirmation occurred before the Third Circuit issued its ruling in In

Grossmans, all claims relating to pre-petition exposure thus represent pre-petition claims, regardless of when the injuries manifested themselves or when those claims would have accrued under non-bankruptcy law.

34.    While In re Grossman's bars claims brought under the overruled theory of accrual—such as claims brought under the second-disease rule—it also provides that "[w]hether a particular claim has been *discharged* by a plan of reorganization depends on factors applicable to the particular case and is best determined by the appropriate bankruptcy court or the district court." Id. (emphasis added).  Factors for the bankruptcy court to consider include "(i) the circumstances of the initial exposure to asbestos, (ii) whether and/or when the claimants were aware of their vulnerability to asbestos, (iii) whether the notice of the claims bar date came to their attention, (iv) whether the claimants were known or unknown creditors, (v) whether the claimants had a colorable claim at the time of the bar date, and (vi) other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g)." In re Grossman's Inc. at 127-28.  While the Court need not find each of the factors weigh in favor of the Reorganized Debtors to discharge the liability asserted in the South Case,[8] an examination of these factors reveals that none of them provides support for permitting assertion of the South Case against the Reorganized Debtors.

35.    First, while the circumstances surrounding South's alleged exposure to asbestos are vaguely pleaded, it is clear that South was aware of his exposure and of his ability to assert a claim against the Debtors well before the Petition Date.  Specifically, South asserted a claim

---

re Grossman's (i.e., June 2, 2010).  See Wright v. Corning, 679 F.3d at 109.  Seeing as  South's alleged exposure occurred decades before the Petition Date, and the Confirmation Order was issued well after June 2, 2010, neither of these caveats apply to the present matter.

[8]    See, e.g., Davis v. Grubb, No. 12-cv-4628, 2013 WL 2297185 at *8 (E.D. Pa. May 23, 2013) (discharging a Claimant's asserted liability after finding four of the six Grossman's factors weighed in favor of the debtors).

against OSG's alleged predecessor-in-interest decades before the Petition Date, which included allegations of mesothelioma, and then voluntarily dismissed such claim.  At no time did South or his counsel object to the Expungement of the South Claim or to confirmation of the Plan or its effect on any claims South might assert.  Indeed, doing so would have been futile where this Court subsequently rejected the notion that contingent claims should remain pending the possibility of diagnosis of a second disease.  See infra ¶ 41.  Moreover, granting the Motion will not leave South without a remedy, as he has named four other defendants with whom he alleges he spent nearly all of his thirty years of sea service, as opposed to claimed service on vessels owned by the Debtors' affiliate for a total of less than one year.  Accordingly, the first factor supports the discharge of the liability asserted in the South Case.  See Davis, 2013 WL 2297185 at *6 (pre-Petition exposure weighs in favor of discharge).

36.    Second, it is equally self-evident that South was aware of the Bar Date, as he filed the South Claim in advance of it.  Indeed, as noted above, South's counsel has been provided notice of all significant developments in the case, including the filing of the Plan, the confirmation of the Plan, and the Effective Date.  See supra ¶ 8, n. 2; see also Davis, 2013 WL 2297185 at *6 (pre-Petition awareness of vulnerability supports discharge of asserted liability).

37.    Third and Fourth, South was a known creditor, and not only did his counsel receive actual notice of all pleadings, but South filed the South Claim.  Moreover, as discussed herein, South's counsel, Jaques, was added to the Debtors' core Bankruptcy Rule 2002 service list at the beginning of the Cases, and as such received abundant notice, including with regard to the Bar Date, the filing and confirmation of the Plan, the Effective Date and all related deadlines.  See supra ¶ 12, n. 3; see also Davis, 2013 WL 2297185 at *7 (notice of the bankruptcy proceedings, specifically the Bar Date, weighs in favor of discharge).

38.    Fifth, as the Bankruptcy Court determined in the Expungement Order, as of the

Bar Date, South had no colorable claim against OSG, as the Original Complaint (which had

explicitly contemplated mesothelioma as a result of South's alleged exposure to asbestos) had

already been voluntarily dismissed and the statute of limitations had fully run.[9]

39.    Sixth, as discussed herein, OSG spent almost a year assessing and winnowing the

thousands of asbestos-related claims filed by Jaques in order to determine the appropriate and

prudent treatment of such claims under the Plan.  Having finally reached a level of comfort with

the number of remaining claims and the potential related liabilities, OSG formulated a Plan that

did not include a section 524(g) trust, as the known amount of asbestos-related exposure made

one unnecessary.  OSG received no objection from Jaques or any other asbestos claimant on

these grounds, and the Plan was confirmed.  It has since gone effective and the Confirmation

Order has long since become final and non-appealable.  Given these specific circumstances, to

allow the South Case to proceed against OSG would reward South's and Jaques's failure to

timely assert their interests and punish OSG for its open, good-faith efforts to formulate a Plan

that treats all parties fairly.  Moreover, permitting the assertion of expunged claims against the

Reorganized Debtors – where there are more than 6,000 claimants similarly situated to South –

would undermine a fundamental basis on which the Plan was formulated and confirmed.

40.    Thus, In re Grossman's not only makes clear that the South Case asserts a *pre-

confirmation* claim subject to the Discharge and Injunction of the Plan, but also that it was fully

---

[9]     To the extent the Davis suggests that the lack of a colorable pre-bar date claim weighs against the Reorganized Debtors, its analysis on that factor is inapplicable here because the Davis claimant did not file any claim against the debtors prior to the bar date.  The Davis court's finding appears to focus on whether the claimant knew of the liability asserted in the violative action prior to the bar date.  Unlike the claimant in Davis, South filed a timely claim asserting the exact liability now asserted in the South Case,  In any event, as Davis itself makes clear, the Reorganized Debtors do not need all of the factors to weigh in their favor in order for the Court to discharge the liability asserted in the South case.  Davis, 2013 WL 2297185 at *8.

and properly discharged pursuant to the Plan.[10]  As such, the Court should enforce the

Confirmation Order against South and Jaques so as to prevent their further attempts to reassert

their discharged claims.

> ii.    This Court Has Repeatedly Evaluated and Dismissed Jaques's "Second Disease"
>        Argument

41.    While Jaques's "second-disease" argument would be unavailing even if raised for

the first time in defense of the filing of the South Case, Jaques has already litigated this issue,

unsuccessfully, repeatedly, before this Court.  On December 19, 2013, the Court heard argument

on four of the Debtors' omnibus objections.  As discussed above, these objections were based on

the pre-petition dismissals of certain proceedings that formed the basis for portions of the

Consolidated Proofs of Claim and argued that there could be no liability for asbestos-related

injuries where the underlying cause of action was brought more than three years before the

Petition Date and voluntarily dismissed before the commencement of bankruptcy proceedings.

See, e.g., *Debtors' Eleventh Omnibus Objection (Substantive) to Certain Claims Pursuant to 11*

*U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. Bankr. L.R. 3007-1 (No Liability Asbestos*

*Claims)* (D.I. 2035).  In opposing these Objections, Jaques argued that the voluntary dismissals

could not affect the timeliness of the Claimants' "[non-]cognizable causes of action," such that

they should retain a "right to file a 'second injury' claim in the event they develop an asbestos-

related malignancy."[11]  In this way, Jaques sought to draw a distinction between unmanifested

---

[10]    As evidenced by Jaques's correspondence with counsel to OSG, Jaques is fully aware of
the law in this Circuit and filed the South Case regardless of its lack of merit.  See Exhibit H,
attached hereto (the "Jaques Correspondence").

[11]    See Claimants' Reply in Opposition to Debtors' Eleventh Omnibus Objection
(Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del.
Bankr. L.R. 3007-1 (No Liability Asbestos Claims) (D.I. 2089); December Hearing Tr. at 21:23-
22:8.

injuries and potential subsequent diagnoses that is the very same distinction upon which he purports to permissibly bring the South Case in the New York Court.

42.     However, none of the Consolidated Proofs of Claim or the underlying complaints stated contingent claims, and instead alleged actual injuries or diseases.  Moreover, Jaques failed to introduce any evidence supporting its new allegation that certain of the Asbestos Claims were for contingent, future injuries.  After reviewing the pleadings and hearing extensive argument, this Court thus rejected Jaques's argument and entered an order granting the Objection. December Hr'g Tr. at 26:18-23 (the Court noting that it had considered Jaques's argument, both in pleadings and argument, and "[found] no merit in it").

43.     Undaunted, Jaques repeated this argument, without proffering *any* evidence, in its opposition to four of the Debtors' subsequent omnibus objections.[12]  In each instance, the Court reiterated its rejection of Jaques's argument that the asbestos claimants could somehow preserve a contingent claim based on the same exposure asserted in the underlying disallowed claims.[13]

44.     This repeated rejection underscores the futility of Jaques's current position, making clear that as a matter of law, from binding precedent from the Third Circuit as well as this Court's own determination on this exact issue, that the expungment of the South Claim precludes the filing of any action related to the pre-petition exposure alleged in South's disallowed Claim.

---

[12]     See D.I.s 2297, 2298, 2299 and 2300.

[13]     While Jaques initially appealed the Expungement Order, it subsequently dismissed that appeal. See Amended Notice of Appeal (D.I. 2214); Stipulation of Voluntary Dismissal of Appeals (D.I. 3505).  Accordingly, the Expungement Order is final.

C. **Failure to Enforce the Plan and Confirmation Order Will Materially Prejudice the Reorganized Debtors**

45.      As discussed herein, the South Claim represented only one of thousands of asbestos-related claims asserted against the Reorganized Debtors.  Should the South Case be allowed to proceed—in other words, should it become clear that the discharge and injunction of the Plan and Confirmation Order will not be enforced against asbestos claimants alleging new injuries—the Reorganized Debtors stand liable to have to relitigate every one of these thousands of asbestos claims, to say nothing of the unknown number of putative plaintiffs who may seek to allege a post-petition diagnosis arising from purported pre-petition exposure.  Given the tremendous time and expense that the Reorganized Debtors have already devoted to assessing and winnowing thousands of these claims, to have to do so again would impose extreme prejudice on the Reorganized Debtors' now-wasted efforts.

46.      But even more important, it is no exaggeration to state that allowing these claims would undermine a fundamental pillar on which the Plan was formulated and confirmed.  As discussed herein, before formulating their Plan, the Debtors carefully weighed their insurance coverage, the number of asbestos claims, and the scope of anticipated potential liability in determining whether or not to formulate a section 524(g) trust.  Having determined that no such trust is necessary—and having received no objections on that basis—the Reorganized Debtors would now potentially face massive, unanticipated exposure arising from a set of claims that the Reorganized Debtors and their creditors had relied upon being fully and finally expunged.  This outcome poses an existential threat to the Reorganized Debtors' continuing emergence from bankruptcy, and must not be allowed to proceed.

## REQUEST FOR SANCTIONS

47.    As described herein, South Counsel have repeatedly flouted this Court's orders, after being advised of the bars to pursuit of the South Case against the Reorganized Debtors, and have demonstrated complete disregard for the law of this Circuit.  Sanctions are necessary both to make the Reorganized Debtors whole and in order to deter future violations of this Court's orders.

48.    Three elements are required for an injured party to recover damages from a person alleged to be in civil contempt: (1) there must be a valid court order; (2) the person to be charged must have actual knowledge of the order; (3) the person must disobey the order.  In re Cont'l Airlines, Inc., 236 B.R. 318, 330–31 (Bankr. D. Del. 1999); In re Mariner Post-Acute Network, 329 B.R. 481, 486 (Bankr. D. Del. 2005) (quoting Continental Airlines); In re Meyers, 344 B.R. 61, 65 (E.D. Pa. 2006).  Although the record here demonstrates willful disregard, the moving party is not required to prove a "willful" violation of the court order to establish civil contempt.  F.T.C. v. Lane Labs-USA, Inc., 624 F.3d 575, 582 (3d Cir. 2010) (stating that good faith is not a defense to civil contempt); Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994) (stating that willfulness is not a necessary element of civil contempt).[14]

49.    First, there can be no question that there is not one but two valid court orders. The Court entered the Expungement Order fully and finally disallowing and expunging the South Claims.  Similarly, the Court has entered the Confirmation Order, on notice to Jaques, confirming the Debtors' plan and enforcing its discharge and injunction provisions.  Those order have long since become final and non-appealable.

---

[14]    While a party can escape sanctions for "substantial compliance" with an order where its non-compliance is inadvertent or it has taken all reasonable steps to comply with the order, this doctrine is entirely inapplicable to the flagrant violation of this Court's orders that the continued prosecution of the South Case represents.

50.     <u>Second</u>, South Counsel had actual and repeated notice and knowledge of the Expungement Order and the Confirmation Order.  As an initial matter, both the Expungement Order and the Confirmation Order were entered on notice to Jaques in the course of the Debtors' cases.  Indeed, after the Expungement Order was entered, the Court repeatedly heard and rejected Jaques' arguments as to why claims such as South's should survive.  Even absent such notice, counsel for the Reorganized Debtors directly advised South Counsel of the impact of the Expungement Order and Confirmation Order on the South Case and warned that absent discontinuance, they would have no choice but to seek sanctions. Exhibit G.

51.     <u>Third</u>, South Counsel have plainly disobeyed the Confirmation Order and Expungement Order.  In bringing the South Case, South Counsel have attempted to re-assert a claim that was disallowed and expunged, with prejudice, by the Bankruptcy Court.  Even in the absence of the Expungement Order, the Injunction provisions of the Confirmation Order plainly bar pursuit of the South Case.  Moreover, by bringing the South Case in New York civil court, South Counsel have attempted to circumvent the jurisdiction of the Bankruptcy Court, which was explicitly retained in both the Expungement Order and the Confirmation Order.

52.     In light of South Counsel's insistence on embroiling the Reorganized Debtors in duplicative, meritless litigation in spite of the clear orders of the Bankruptcy Court and the Reorganized Debtors' explicit warnings, the Reorganized Debtors believe that sanctions against South Counsel in the amount of the reasonable, documented costs and expenses of bringing this motion and responding to the South Case are fully warranted.

## RESERVATION OF RIGHTS

53.     Reorganized Debtors reserve all rights and defenses not asserted herein, including the right to serve discovery in support of the Motion pursuant to Rule 9014 should South oppose the relief sought.

## NOTICE

54.     Notice of this Motion has been given by Federal Express to Jaques and by first class mail to those parties that have requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, OSG submits that no further notice need be given.

## CONCLUSION

55.     In conclusion, OSG requests that the Court, based on the above-explained reasons (1) enforce the Confirmation Order by ordering South and South Counsel to discontinue the South Case with prejudice as against OSG; (2) confirm that the Claims against OSG are barred under article 13.5 of the Plan, incorporated by reference in the Confirmation Order; and (3) impose sanctions against South Counsel in the amount of OSG's reasonable and documented cost and expense of filing this motion and responding to the South Case.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

WHEREFORE the Reorganized Debtors request entry of an order granting the Motion, and that the Court grant such other and further relief as may be just and proper.

Dated:  February 23, 2015  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Luke A. Barefoot (admitted *pro hac vice*)  
Cleary Gottlieb Steen & Hamilton LLP  
One Liberty Plaza  
New York, New York 10006  
Telephone:  (212) 225-2000  
Facsimile:  (212) 225-3999

 - and –

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ William M. Alleman, Jr.*  
Derek C. Abbott (No. 3376)  
Daniel B. Butz (No. 4227)  
William M. Alleman, Jr. (No. 5449)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone:  (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Reorganized Debtors.*