**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OVERSEAS SHIPHOLDING GROUP, INC., | ) | Case No. 12-20000 |
| et al. | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

**MEMORANDUM OPINION[1]**

Before the Court is the Objection of Overseas Shipholding
Group, Inc. (the "Debtor") to the Amended Claim filed by Maritime
Overseas Corporation ("Maritime").  The Amended Claim seeks
damages resulting from the Debtor's rejection of a commercial
real estate Sublease with Maritime.  For the reasons stated
below, the Court will disallow the alleged rejection damages
claim.

I.   BACKGROUND

The relevant facts are not in dispute.  The Debtor is one of
the largest oil tanker operating companies in the world.  On
November 23, 2004, the Debtor and TST/Commerz East Building
("TST") entered into a lease agreement (the "Overlease") whereby
the Debtor leased the fifth and sixth floors of 666 Third Avenue,
New York, New York.  Two years later, the Debtor sublet part of

---

[1]  This Opinion constitutes the findings of fact and conclusions
of law of the Court pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure, which is made applicable to contested
matters by Rule 9014 of the Federal Rules of Bankruptcy
Procedure.

the space to Maritime pursuant to a sublease agreement (the "Sublease").  The Overlease was set to expire on December 31, 2020, and accordingly, the Sublease was set to expire on December 30, 2020.  The Sublease provided, however, that if the Overlease terminated early, the Sublease would terminate on that same date.

On November 14, 2012, the Debtor and its affiliates filed voluntary petitions under chapter 11.  Subsequently, the Debtor and Maritime entered into a Stipulation with Chrysler East, the assignee of TST, whereby the Debtor rejected the Overlease and Sublease.  Pursuant to the Stipulation, the Debtor and Maritime agreed to vacate the leased premises by June 30, 2013, the effective rejection date.  On April 10, 2013, the Court approved the Stipulation.

On May 7, 2013, Maritime filed a general unsecured claim against the Debtor for $30,788.32 for return of its security deposit under the Sublease.  On September 26, 2013, Maritime filed an amended claim adding $367,858 for damages from the rejection of the Sublease.  The rejection damages claim includes moving expenses, increased rent, electricity, and legal fees relating to Maritime's relocation.

On August 22, 2014, the Debtor filed an Objection to Maritime's Amended Claim, seeking to disallow any rejection damages and to limit the allowed claim to the amount of the security deposit.

II.  <u>JURISDICTION</u>

The Court has jurisdiction over this core matter pursuant to 28 U.S.C. § 1334 & 157(b)(2)(A), (B), & (O).

III. <u>DISCUSSION</u>

The Debtor cites two provisions of the Sublease as bases for disallowance of Maritime's rejection damages claim.

Under Clause 2 of the Sublease, the Debtor is not liable to Maritime for any damages in the event of an early "termination" of the Overlease.  Thus if the Debtor's rejection terminated the Overlease, then Maritime's claim for rejection damages must be disallowed.  Alternatively, the Debtor argues that a separate provision of the Sublease, Clause 22(j), bars Maritime from seeking damages from the Debtor or its affiliates for any reason.

A.  <u>Standard of Review</u>

1.  <u>Claims Objections</u>

A claimant must allege facts sufficient to support a legal basis for the claim.  If the claim meets this standard, the claim is prima facie valid.  Fed. R. Bankr. P. 3001(f).  <u>See also</u> <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 173 (3d Cir. 1992); <u>In re Planet Hollywood Int'l</u>, 274 B.R. 391, 394 (Bankr. D. Del. 2001).

If an objection to a claim is filed, "the objecting party bears the initial burden of presenting sufficient evidence to overcome the presumed validity and amount of the claim."  <u>Planet</u>

<u>Hollywood</u>, 274 B.R. at 394.  "If the objecting party overcomes the prima facie validity of the claim, then the burden shifts to the claimant to prove its claim by a preponderance of the evidence".  <u>In re Smith</u>, 249 B.R. 328, 333 (Bankr. S.D. Ga. 2000) (citations omitted).

> 2.   <u>Contract Interpretation</u>

New York law governs the Sublease.  (Sublease at Clause 22(c).)  Under New York law,

> The fundamental, neutral precept of contract
> interpretation is that agreements are construed in
> accord with the parties' intent.  'The best evidence of
> what parties to a written agreement intend is what they
> say in their writing.'  Thus, a written agreement that
> is complete, clear and unambiguous on its face must be
> enforced according to the plain meaning of its terms.

<u>Greenfield v. Philles Records, Inc.</u>, 98 N.Y.2d 562, 569 (N. Y. 2002) (internal citations omitted).  Only if the agreement is ambiguous, may the court consider extrinsic evidence of the parties' intent.

> B.   <u>Clause 2</u>

The Debtor contends that Clause 2 of the Sublease mandates disallowance of Maritime's rejection damages claim.  Clause 2 provides, in relevant part:

> In the event that the Lease terminates in its entirety
> (or in part, as applicable) during the Term for any
> reason, then . . . this Sublease shall terminate (in
> whole or in part, as applicable) on the date of such
> termination as if such date had been specified in this
> Sublease as the Expiration Date and Tenant shall have
> no liability to Subtenant with respect to such
> termination.

Maritime argues Clause 2 does not apply because the Debtor's rejection of the Overlease was not a termination but merely a pre-petition breach of the Overlease.  11 U.S.C. § 365(g) ("the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease.")  See also In re Columbia Gas Sys. Inc., 50 F.3d 233, 239 n. 8 (3d Cir. 1995); In re CB Holding Corp., 448 B.R. 684, 686-87 (Bankr. D. Del. 2011); In re Teleglobe Communic'ns Corp., 304 B.R. 79, 83-84 (D. Del. 2004).

According to Maritime, the express language of the Stipulation reflects the parties' understanding that rejection constitutes a breach rather than a termination.  Maritime notes that the Stipulation uses the term "rejection" instead of "termination" throughout.  For example, Paragraph 3 of the Stipulation states, "The parties acknowledge and agree that: (a) the rejection of the [Overlease] by the debtor as of the Rejection Date will result in a breach of the [Overlease]." Similarly, in Paragraph 3 of the Order approving the Stipulation, the Court states that "[the Debtor] is authorized to reject the Existing Sublease Agreement effective as of June 30, 2013."

The Debtor concedes that rejection creates a pre-petition breach under controlling case law.  However, the Debtor urges the Court to consider the intent of contracting parties.  Through the Stipulation, the parties agreed to vacate the premises upon

rejection of the Overlease.  In effect, the Debtor argues, they agreed to terminate the Overlease.  Thus, Clause 2 applies and Maritime cannot claim resulting damages.  To do otherwise would expand Maritime's pre-petition contractual rights simply because the Debtor was in bankruptcy.

The Court rejects this argument.  The parties' intent is evident from the express language of the Stipulation which provides only that the Overlease is rejected by the Debtor, not that it is terminated.  (See Stipulation at ¶ 3.)  If the parties had intended a termination of the Overlease, they would have used that language.

This is especially so because the Bankruptcy Code expressly provides that rejection of the Overlease is a breach and not a termination.  11 U.S.C. § 365(g).  Case law is clear on this point, as well.  See, e.g., Columbia Gas Sys., 50 F.3d at 239 n. 8 (3d Cir. 1995) ("Rejection, which is appropriate when a contract is a liability to the bankrupt, is equivalent to a nonbankruptcy breach") (citation omitted); CB Holding, 448 B.R. at 686-87 ("It is well-settled that the rejection of a lease pursuant to § 365 results in a prepetition breach; it does not constitute a termination of the lease") (citations omitted); Teleglobe Communic'ns, 304 B.R. at 83 ("a rejection and surrender of a nonresidential real property lease is a breach of the lease and not a termination thereof").

The Debtor alternatively argues that the rejection of the Overlease should be treated as a termination under the authority of Chatlos Sys., Inc. v. Kaplan, which held that "[r]ejection of a non-residential lease results in termination of the lease." 147 B.R. 96, 98 (D. Del. 1992) (quoting In re 6177 Realty Associates, Inc., 142 B.R. 1017, 1019 (Bankr. S.D. Fla. 1992)). The Court in Chatlos held that when the debtor rejected a lease which was subject to a sublease, the sublease must also be deemed rejected because the sublessee's rights derive from the debtor's rights. Id. at 100. The Chatlos Court noted that once a debtor rejects a lease he must surrender possession of the premises to the landlord. Id. at 98 (citing 11 U.S.C. § 365(d)(4)). The Court then found that, on the facts before it, the debtor had rejected the lease and done everything it could to surrender possession of the property to the landlord, thereby terminating the lease. Id. at 100.

The Court is not persuaded by the Chatlos analysis or its applicability to this case. In this case, Maritime did not elect to remain in possession. Nor did the Chatlos Court discuss the subtenant's rights under section 365(h)(1). (See discussion at Part C, infra.) Therefore, the Court concludes that because the Overlease was never terminated, Clause 2 is not applicable.

7

C.    Clause 22(j)

The Debtor also argues that Clause 22(j) of the Sublease prevents Maritime from asserting a claim for rejection damages. That clause provides:

> Neither Tenant nor any of Tenant's Related Parties shall be personally liable for the performance of Tenant's obligations under this Sublease.  Subtenant shall look solely to Tenant's interests in the Lease to enforce Tenant's obligations hereunder and shall not seek any damages against Tenant or any of the Tenant's Related Parties.  Neither Subtenant nor any partner, member, officer, director, employee, representative, contractor or agent of Subtenant shall be liable for the performance of Subtenant's obligations under this Sublease.

Maritime argues that Clause 22(j) bars damages for the nonperformance of Sublease obligations only.  In contrast, Maritime contends that it is not seeking performance-related damages, only expectation and consequential damages from the rejection of the Sublease.  The Debtor disputes Maritime's characterization and argues that Maritime is attempting to hold it liable for failure to perform.  If the Debtor had performed, Maritime would have no damages for moving, higher rental costs or anything else it is seeking.

The Court agrees with the Debtor that Clause 22(j) bars Maritime's rejection damages claim.  Clause 22(j) says outright that Maritime "shall not seek any damages" against the Debtor or any of its related parties if the Debtor does not perform the

Sublease.  If the Debtor had performed the Sublease instead of rejecting it, Maritime would have no rejection damages.

D.    Section 365(h)

Section 365(h) of the Bankruptcy Code does not create any additional rights for Maritime.  If a debtor is a lessor[3] and rejects an unexpired lease, the tenant has two options: 1) the tenant can surrender possession of the premises and treat the lease as terminated, or 2) the tenant can retain his rights under the lease.  11 U.S.C. § 365(h)(1)(A)(i)-(ii).  See also In re Chestnut Ridge Plaza Assocs., L.P., 156 B.R. 477, 482 (Bankr. W.D. Pa. 1993).

In this case, Maritime chose the first scenario.  Generally, under that scenario, the tenant may seek damages as a general unsecured claim.  Id. at 482 ("One option given to a tenant by § 365(h)(1) is to treat the lease as terminated, quit the premises and state its claim against the estate as an unsecured claim.").  The amount of damages Maritime can claim, however, is no more than it could claim outside of bankruptcy, with reference to the underlying agreement and applicable state law.  See Columbia Gas, 50 F.3d at 239 n. 8 ("Rejection leaves the nonbankrupt with a

---

[3]    The application of section 365(h)(1) is the same where the debtor is a sublessor and has a subtenant.  See In re Zota Petroleums, LLC, 482 B.R. 154, 161 (Bankr. E.D. Va. 2012) (holding that once debtor sublessor rejected the lease, sublessee had § 365(h)(1) right to treat the sublease as continuing which right could not be extinguished by a later sale of the debtor-sublessor's assets under § 363).

claim against the estate just as would a breach in the

nonbankruptcy context").

     As the Court found above, Clause 22(j) of the Sublease

states that Maritime "shall not seek any damages against" the

Debtor or its related parties in the event the Debtor fails to

perform (i.e., breaches the Sublease).  Maritime is not entitled

to any greater rights under section 365(h) than it has under

state law.  Therefore, its rejection damages claim must be

disallowed.


IV.   CONCLUSION

     For the foregoing reasons, the Court will sustain the

Debtor's Objection to Maritime's Amended Claim and will enter an

Order reducing and allowing Maritime's Amended Claim as a general

unsecured claim in the amount of $30,788.32.



Dated: June 1, 2015                    BY THE COURT:


                                       _____
                                       Mary F. Walrath
                                       United States Bankruptcy Judge